# JUDGE BUCHWALD

FILE COPY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PANLINE U.S.A. INC. d/b/a ALEX
TOYS,

      Plaintiff,

      - against -

VOLKSWAGEN
AKTIENGESELLSCHAFT,
VOLKSWAGEN OF AMERICA, INC.

      Defendants.

---

CIV. ACTION NO. **CIV 10272**

**COMPLAINT FOR DECLARATORY**
**JUDGMENT**



NOV 1 3 2007
U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiff Panline U.S.A. Inc. d/b/a Alex Toys ("Alex Toys" or "Plaintiff"), by and

through its attorneys, allege as and for its Complaint against Defendants Volkswagen

Aktiengesellschaft ("VWAG") and Volkswagen of America, Inc. ("VWoA") (collectively

VWAG and VWoA are referred to as "Defendants") on personal knowledge as to its on

activities and on information and belief as to the activities of others as follows:

## SUMMARY OF THE COMPLAINT

      1.      This is an action for declaratory judgment pursuant to 28 U.S.C. §§2201 and

2202 that Plaintiff's children's products including but not limited to Tub Toy, Lacing Around

- City/Country, Rock Painting Kit, My Touchable Puzzle -4- Vehicles, My First Words,

Finger Painting Party, Tissue Paper Art, Sand Art - Sand Shapes, Paper Mache Refill, Dough

Tool Set, Clay Racer Activity Kit and Crayon Car (the "Accused Products") do not infringe

upon Defendants' U.S. Trademark Registration Nos. 3,038,741 and 3,043,073; Intl.

Registration No. 778996; and/or trade dress (collectively the "VW Marks").

1

## PARTIES

2.     Plaintiff is a corporation organized and existing under the laws of the State of New Jersey, and having a principal place of business at 251 Union Street, Northvale, New Jersey 07547.

3.     Upon information and belief, Defendant VWAG is a company duly organized and existing under the laws of Germany, and having a principal place of business in Wolfsburg, Germany.

4.     Upon information and belief, Defendant VWoA is a corporation duly organized and existing under the laws of the State of New Jersey, and having a principal place of business at 3800 Hamlin Road, Auburn Hills, Michigan 48326.

## JURISDICTION AND VENUE

5.     This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§2201 and §2202, and the Lanham Act, 15 U.S.C. §1051, *et. seq.*  This action is brought for the purpose of determining a question of actual controversy concerning trademark and trade dress rights owned by Defendants and accusations of trademark counterfeiting, trademark and trade dress infringement made by Defendants against Plaintiff.

6.     This Court has subject matter jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 and §2202 and Fed. R. Civ. P. 57.

7.     This Court has personal jurisdiction over Defendants in that they conduct business in the State of New York and in this District, and maintain contacts within the State of New York.

2

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and §1400(a) in that Defendants conduct business in this district and are subject to personal jurisdiction in this judicial district.

## PLAINTIFF'S BUSINESS AND PRODUCTS

9. Plaintiff is in the business of designing, selling and distributing educational toys and products for children, including the Accused Products at issue in this action. Plaintiff first began in this business at least as early as 1986. Plaintiff now produces over 650 items in new categories of juvenile toys: bathtub play, imaginative and dramatic play, fashion and jewelry, beach and pool playthings and whimsical children's furniture. Plaintiff's products are currently sold worldwide in over 65 countries through specialty retail stores, catalogs and web sites. Printouts from Plaintiff's website evidencing Plaintiff's products are attached as Exhibit A.

10. Plaintiff's mission is to provide children with quality creative products that foster personal expression and build self-esteem. The best children's activities are both fun for the children and open a child's mind to new skills, new ideas and new worlds.

11. Plaintiff's products have received prestigious honors in the industry with awards for its innovative, engaging and outstanding products from a variety of highly recognized magazines and toy review organizations, including but not limited to the ASTRA Award, Better Homes and Gardens Best Toy of the Year, Child Magazine Best Toys of the Year and Creative Child Magazine Preferred Choice Award and Toy of the Year Awards.

## DEFENDANTS' BUSINESS AND PURPORTED MARKS

12. Defendant VWoA is a subsidiary of and the exclusive U.S. importer of cars manufactured by VWAG. VWAG purports to own several trademarks, including U.S.

3

Trademark Registration Nos. 3,038,741 and 3,043,073 and Intl. Registration No. 778996 for the design of the Volkswagen Beetle. VWAG's trademarks are licensed to VWoA for use in the United States on automobiles and related products.

13.    On or about April 25, 2007, Defendants sent Plaintiff a cease and desist letter asserting that Plaintiff's manufacture and sale of the "Tub Toys" was infringing various intellectual property rights owned by Defendants. A copy of Defendants' letter is attached as Exhibit B. Defendants' letter alleged Plaintiff's manufacture and sale of the "Tub Toys" constitutes trademark counterfeiting, trademark infringement and trade dress infringement, misappropriation and other state law claims. Defendants' letter demanded payment in the amount of twenty five percent (25%) of gross revenues from Plaintiff's sale of the Tub Toys or five thousand dollars ($5,000), which ever is less, and delivery of Plaintiff's inventory of the "Tub Toys" to Defendants. The letter also threatened damages, attorney's fees, and future enforcement.

14.    On or about May 30, 2007, Plaintiff filed but did not serve its Complaint for declaratory relief in this action. The parties then engaged in settlement discussions in an attempt to resolve this matter. On June 28, 2007, during the settlement discussions, Defendants sent Plaintiff a draft complaint of their own, expanding their assertion of infringement from just the Tub Toy to all of the Accused Products and bringing claims for trademark dilution in addition to infringement. A copy of Defendants' threatened complaint is attached as Exhibit C. Defendants have never filed their draft complaint despite sending it to Plaintiff more than four months ago.

4

## DECLARATORY JUDGMENT

15.    Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 to 14 of the Complaint as though fully set forth herein.

16.    The uncertainty caused by Defendants' threats has raised issues about whether Plaintiff should continue selling the Accused Products.

17.    On account of Defendants' conduct, described herein, Plaintiff reasonably anticipates that in the future it will be sued by Defendants for trademark counterfeiting, trademark counterfeiting, trademark dilution, trade dress infringement and/or related claims arising from its sale of the Accused Products.

18.    An actual controversy exists between the parties with respect to whether Plaintiff's sale of the Accused Products unfairly competes with or otherwise violates Defendants' rights, if any, under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* or otherwise pursuant to any other federal laws or the laws or statutes of any state.

19.    To avoid further harm to and uncertainty in its business, Plaintiff seeks a judicial declaration establishing that the Accused Products do not infringe any of Defendants' alleged trademark or trade dress rights, and that the sale thereof does not constitute unfair competition, under any other state or federal law.

20.    Plaintiff will be damaged in its business and reputation by Defendants' threats of infringement and will be irreparably damaged if the existing controversy between the two companies is not promptly resolved.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

1.    That the Court declare that Plaintiff's manufacture, advertising, promotion and sale of the Accused Products neither infringes any of Defendants' alleged trademark or trade

5

dress rights in the VW Marks nor constitutes, trademark dilution or unfair competition, under any other state or federal law;

2.     That the Court declare that Defendants do not have any intellectual property right or exclusive right in or to any of the Accused Products;

3.     That the Court award Plaintiff reasonable attorneys' fees and costs; and

4.     All such other and further relief, in law or in equity, to which Plaintiff may be entitled or which the Court deems just and proper.

### DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by the jury on its claims herein.

Dated:  November 9, 2007

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: _____
G. Roxanne Elings (GE 8321)
David Saenz (DS 1976)
Dana Schuessler (DS 0711)
MetLife Building
200 Park Avenue, 34th Floor
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Attorneys for Plaintiff Panline U.S.A Inc. d/b/a Alex Toys*

6

# Exhibit A





ALEX's mission is to provide children with quality creative product personal expression and build self-esteem. The best children's act provide lots of fun and they open a child's mind to new skills, new new worlds.

We started ALEX in 1986 with a line of high quality basic arts and products for children. Over the years, ALEX has grown and today over 650 items in new categories of juvenile toys: bathtub play, in and dramatic play, fashion and jewelry, beach and pool plaything: whimsical children's furniture.

Our attention to quality and design has not gone unnoticed. Many products have received the most prestigious honors in the industr awards for our innovative, engaging and outstanding products fro of highly recognized magazines and toy review organizations. ALE are currently sold worldwide in over 65 countries through specialt stores, catalogs and web sites.

ALEX is a lifestyle. ALEX helps start children on a lifetime of learn discovery. It all begins with a brushstroke...it all begins with ALE>

*Nurit & Rick*
Nurit & Rick Amdur
Founders

Back | Home | Back to Top

Alex Toys                                                          Page 1 of 2









Previous | **Next**

Back | **Home** | **Back to Top**







## Awards

**American Baby magazine Best Toys of the Year**





**RAINBOW ROLLERS**

**ASTRA Good Toy Award**



**CAR VALET**

**Better Homes & Gardens Best Toy of the Year**



**CERAMIC SWIRL ART**

**Child Magazine Best Toys of the Year**





**CHUNKY & FUNKY SCARF -- PINK**



**SUPER ART STUDIO**



**CHI FUN N**







      

**ALEX® Activity Kits Awarded**
**The National Parenting Center's**
**Seal of Approval**
10/8/07

**iParenting**
**Media Awards**
**2007**
8/27/07

**Sixteen New Alex® Pr**
**Win OppenheimToy P**
**Gold Seal Awar**
8/27/07

**New ALEX**
**Little Hands®**
**Products for 2007!**
5/3/07

**ALEX Products**
**Are The Best Toys**
**of the Year!**
12/20/06

**ALEX Wins T**
**Oppenheim**
**Portfolio Plati**
**Awards**
10/4/06

Back | Home | Back to Top



     



# PLAY&LEARN

Sort By:  Featured Items  

VIEW ALL

ART

PLAY&LEARN



### BUILD A BUDDY - FRIENDS
A whole new way to puzzle! Stack interlocking notched pieces to build crazy friends and pets.
- Suitable for ages: 2+
- Suggested Retail Price: $9.99

Awards: iParenting Media Award



### BUILD A BUDDY - PETS
A whole new way to puzzle! Stack interlocking notched pieces to build crazy friends and pets.
- Suitable for ages: 2+
- Suggested Retail Price: $9.99

Awards: iParenting Media Award



### ONE, TWO TIE MY SHOE
4 chunky foam shoes to lace and learn to tie.
- Suitable for ages: 3+
- Suggested Retail Price: $9.99

Awards: iParenting Media Award



### LACING AROUND -- CITY/COUNTRY
Lace 10 fun shapes on to big round scenes!
- Suitable for ages: 3+
- Suggested Retail Price: $11.99

### LACING AROUND -- FOREST/OCEAN
Lace 10 fun shapes on to big round scenes!
- Suitable for ages: 3+
- Suggested Retail Price: $11.99

### MY STACKABLE PUZZLE - BIRTHDAY CAKE
Stack up the pieces to complete the puzzle!



- Suitable for ages: 3+
- Suggested Retail Price: $9.99



## MY STACKABLE PUZZLE - ICE CREAM
**Stack up the pieces to complete the puzzle!**
- Suitable for ages: 3+
- Suggested Retail Price: $9.99



## MY STACKABLE PUZZLE - PUPPY
**Stack up the pieces to complete the puzzle!**
- Suitable for ages: 3+
- Suggested Retail Price: $9.99



## MY STACKABLE PUZZLE - MONKEY
**Stack up the pieces to complete the puzzle!**
- Suitable for ages: 3+
- Suggested Retail Price: $9.99



## MY NUMBER PUZZLES
**10 chunky foam puzzles!**
- Suitable for ages: 2+
- Suggested Retail Price: $14.99



## MY FIRST WORDS
**An early introduction to spelling with simple words, easy puzzles, and colorful designs.**
- Suitable for ages: 2+
- Suggested Retail Price: $9.99



## MY MIX N MATCH FARM
**Fun farm friends are puzzles that can be mixed and matched to m ake funny creatures.**
- Suitable for ages: 2+
- Suggested Retail Price: $9.99



## GIANT FLOOR PUZZLE - FARM
**These giant 17-piece floor puzzles have big, simple puzz pieces so children learn about spatial relations.**
- Suitable for ages: 0+
- Suggested Retail Price: $24.99

    **Awards: Dr. Toy's Smart Play Smart Toy, Oppenheim Toy Portfolio Gold Seal Award, Parenting Magazine's Mom-Tested! Award**

## GIANT FLOOR PUZZLE - HOUSE
**These giant 17-piece floor puzzles have big, simple puzz pieces so children learn about spatial relations.**



- **Suitable for ages: 0+**
- **Suggested Retail Price: $24.99**

> **Awards: Dr. Toy's Smart Play Smart Toy, Oppenheim Toy Portfolio Gold Seal Award, Parenting Magazine's Mom-Tested! Award**

## ABC ZOO



**Children learn the alphabet with this soft foam puzzle, as they match the letters and animals together.**
- **Suitable for ages: 2+**
- **Suggested Retail Price: $19.99**

## SAND BOX



**Feeling the sand and moving it to expose the colors underneath stimulates the senses of young children.**
- **Suitable for ages: 18 Mos+**
- **Suggested Retail Price: $24.99**

## MY FIRST LACING FARM (4)



**These lacing activities develop fine motor skills as toddle explore their world through their sense of touch.**
- **Suitable for ages: 18 Mos+**
- **Suggested Retail Price: $8.99**

## MY TOUCHABLE PUZZLE-4-VEHICLE



**Children develop problem solving skills and learn to mat shapes and images as they assemble these puzzles.**
- **Suitable for ages: 18 Mos+**
- **Suggested Retail Price: $15.99**

## MY TOUCHABLE PUZZLE (4)-GARDEN



**Children develop problem solving skills and learn to mat shapes and images as they assemble these puzzles.**
- **Suitable for ages: 18 Mos+**
- **Suggested Retail Price: $15.99**

## MY LAYERED LACING (4)



**This familiar lacing activity presents new spatial challeng by lacing 2 pieces together.**
- **Suitable for ages: 2+**
- **Suggested Retail Price: $11.99**

> **Awards: The National Parenting Center's Seal of Approval**

## MY FIRST LACING FASHION (4)

**These lacing activities develop fine motor skills as toddle explore their world through their sense of touch.**
- **Suitable for ages: 18 MOS+**
- **Suggested Retail Price: $8.99**

## MY FIRST LACING TOOLS (4)

**These lacing activities develop fine motor skills as toddle explore their world through their sense of touch.**



- Suitable for ages: 18 Mos+
- Suggested Retail Price: $8.99

### MY PATTERN PUZZLES

These interchangeable pattern pieces help develop sequential thinking and create dazzling combinations!

- Suitable for ages: 18 Mos+
- Suggested Retail Price: $14.99

Back | Home | Back to Top



About Alex | News | Store Finder | Awards | Press Release | Recall | ALEX Worldwide | FAQ | Contact Us

     



# FURNITURE

**Sort By:** Featured Items 

VIEW ALL

FURNITURE

ROOM DECOR



### MY CAFE SET
Adorable 3-piece folding cafe set perfectly sized for little ones.
- Suitable for ages: 3+
- Suggested Retail Price: $119.99



### HAPPY CAMPER CHAIR
Color a cool camp chair with permanent markers.
- Suitable for ages: 3+
- Suggested Retail Price: $23.99

   Awards: Dr. Toy's Best Vacation Products, Oppenheim Toy Portfolio Gold Seal Award



### SUPER ART TABLE WITH PAPER ROLL
Durable hardwood table with paper roll holder, chalkboard surface and two benches for all kinds of creative activities.
- Suitable for ages: 3+
- Suggested Retail Price: $179.99

   Awards: Dr. Toy's 100 Best Children's Products, NAPPA Gold Seal Award, Oppenheim Toy Portfolio Platinum Award



### MY CREATIVE CENTER
The perfect art table for a young artist or two!
- Suitable for ages: 3+
- Suggested Retail Price: $159.99

   Awards: Oppenheim Toy Portfolio Platinum Award



### MY FIRST DESK
Be the star of your own "homeroom" with a perfectly sized desk to call your own!
- Suitable for ages: 3+
- Suggested Retail Price: $69.99

   Awards: Dr. Toy's 100 Best Children's Products, The National Parenting Center's Seal of Approval



### MY ART DESK
**A dream desk for the aspiring young artist!**
- **Suitable for ages: 3+**
- **Suggested Retail Price: $149.99**

**Awards: NAPPA Gold Seal Award**

Back | Home | Back to Top



      



# ROOM DECOR

Sort By:  Featured Items ▾

**VIEW ALL**

**FURNITURE**

**ROOM DECOR**



### PATCH A-PEEL BUTTERFLY
**Decorate a big, beautiful hanging butterfly with precut fabric stickers. Just peel and stick!**
- **Suitable for ages: 7+**
- **Suggested Retail Price: $12.99**



### BUTTERFLY FRAME
**Decorate a butterfly to show your favorite photo.**
- **Suitable for ages: 7+**
- **Suggested Retail Price: $9.99**



### ABC STRING-UPS
**54 heavy cardboard letters are printed with colorful patterns. A great way to decorate your room!**
- **Suitable for ages: 0+**
- **Suggested Retail Price: $15.99**

     Awards: Oppenheim Toy Portfolio Gold Seal Award



### MY ART SHOW
**Show off your art in style with this colorful wall hanging**
- **Suitable for ages: All**
- **Suggested Retail Price: $24.99**



### BUTTERFLY TENT
**Transform your room into a beautiful Butterfly Dreamland and be a Butterfly Princess!**
- **Suitable for ages: 3+**
- **Suggested Retail Price: $79.99**



### DREAM TENT
**This lovely canopy frames a twin bed and turns it into an enchanting place to play with dolls, to read, write and to dream!**
- **Suitable for ages: 3+**
- **Suggested Retail Price: $79.99**



### WATCH ME GROW - IN MY GARDEN
**Mark their growth—inch by inch and year by year!**
- **Suitable for ages: 0+**
- **Suggested Retail Price: $12.99**



### MY BALLERINA STOOL
**A place to sit, stand and play!**
- **Suitable for ages: 5+**
- **Suggested Retail Price: $19.99**



### WATCH ME GROW - ON MY ROAD
**Mark their growth—inch by inch and year by year!**
- **Suitable for ages: 0+**
- **Suggested Retail Price: $12.99**



### PLAY MAT
**A take along play mat that folds into a toy bag.**
- **Suitable for ages: 0+**
- **Suggested Retail Price: $15.99**
  - **Awards: The National Parenting Center's Seal of Approval**



### MY MAGNETIC CALENDAR
**Get organized with this cool magnetic calendar!**
- **Suitable for ages: 6+**
- **Suggested Retail Price: $16.99**
  - **Awards: NAPPA Honorable Mention**



### STICKERS FOR MY ROOM - FUNKY FRAMES
**Brightly colored, reusable wall stickers are the coolest w
to decorate your room!**
- **Suitable for ages:**
- **Suggested Retail Price: $9.99**



### STICKERS (50) FOR MY ROOM - GO TEAM
**Brightly colored, reusable wall stickers are the coolest w
to decorate your room!**
- **Suitable for ages: 7+**
- **Suggested Retail Price: $9.99**



### STICKERS FOR MY ROOM--BANDANA PATTER
**Brightly colored, reusable wall stickers are the coolest w
to decorate your room!**
- **Suitable for ages: 3+**
- **Suggested Retail Price: $9.99**

### STICKERS FOR MY ROOM - GIRLIE STUFF
**Brightly colored, reusable wall stickers are the coolest w



**to decorate your room!**
- **Suitable for ages: 7+**
- **Suggested Retail Price: $9.99**



## STICKERS FOR MY ROOM--FLOWER PATTERN
**Brightly colored, reusable wall stickers are the coolest w
to decorate your room!**
- **Suitable for ages: 3+**
- **Suggested Retail Price: $9.99**

Back | Home | Back to Top



About Alex | News | Store Finder | Awards | Press Release | Recall | ALEX Worldwide | FAQ | Contact Us







Bath

# ART IN THE TUB

Sort By: **Featured Items** 

VIEW ALL

ART IN THE TUB

CLEAN IN THE TUB

LEARN IN THE TUB

PLAY IN THE TUB

SAFETY IN THE TUB

TUB TUNES



### STAR CRAYON IN THE TUB
**Chubby star-shaped bathtub crayon is fun to hold and easy to use!**
- **Suitable for ages: 18 MOS+**
- **Suggested Retail Price: $4.99**



### BATH WRITERS (4)
**Use these Bath Writers to draw on tub walls!**
- **Suitable for ages: 2+**
- **Suggested Retail Price: $8.49**



### RUB A DUB DRAW IN THE TUB
**Draw colorful pictures with fun bathtub crayons.**
- **Suitable for ages: 2+**
- **Suggested Retail Price: $6.49**



### DRAW IN THE TUB CRAYONS (6)
**Use set of 6 bathtub crayons to draw colorful pictures ( porcelain or yourself.**
- **Suitable for ages: 2+**
- **Suggested Retail Price: $4.99**



### DRAW IN THE TUB CRAYON HOLDER
**Keep crayons dry and within easy reach with a friendly fish shaped holder that suction cups to the wall.**
- **Suitable for ages: 2+**
- **Suggested Retail Price: $9.99**



### DRAW IN YOUR TUB - GARDEN/JUNGLE
**Color 2 cool pictures with bathtub crayons, then wash use them over and over again!**
- **Suitable for ages: 2+**
- **Suggested Retail Price: $8.49**

### DRAW IN YOUR TUB - FISH/FARM
**Color 2 cool pictures with bathtub crayons, then wash use them over and over again!**
- **Suitable for ages: 2+**



* Suggested Retail Price: $8.49



## DRAW IN YOUR TUB-CARS/ROBOTS
Color 2 cool pictures with bathtub crayons, then wash  
use them over and over again!
* Suitable for ages: 2+
* Suggested Retail Price: $8.49



## DOODLE DUCK
Fun foam Doodle Duck floats in your tub or sticks to th·
wall. The perfect surface for bath time coloring fun!
* Suitable for ages: 2+
* Suggested Retail Price: $9.99



## WATER COLOR IN THE TUB
Paint beautiful pictures, color by color, drip by drip, rig
in the tub!
* Suitable for ages: 3+
* Suggested Retail Price: $9.99



## ARTIST IN THE TUB PAINTING SET
Become a true bath time artist with a complete set of
ALEX super bright bath paints and sponge painting
supplies!
* Suitable for ages: 2+
* Suggested Retail Price: $19.99

     Awards: Parents' Choice Fun Stuff Award



## BATHTUB FINGER PAINTING KIT
Paint yourself clean with soapy finger paint.
* Suitable for ages: 2+
* Suggested Retail Price: $12.99



## BATHTUB FINGER PAINT - REFILL PACK
Refill pack of soapy finger paints for our popular Rub A
Dub Paint in the Tub kit.
* Suitable for ages: 2+
* Suggested Retail Price: $6.49



## COLOR YOUR TUB FIZZY TINTS
Turn ordinary bathwater into a tub of colorful fun!
* Suitable for ages: 2+
* Suggested Retail Price: $6.49

## COLOR YOUR TUB FIZZY TINTS DISPLAY
Colorful gravity-feed display can sit on a counter or ha·



About Alex | News | Store Finder | Awards | Press Release | Recall | ALEX Worldwide | FAQ | Contact Us





# CLEAN IN THE TUB

Sort By:  **Featured Items**



VIEW ALL

ART IN THE TUB

CLEAN IN THE TUB

LEARN IN THE TUB

PLAY IN THE TUB

SAFETY IN THE TUB

TUB TUNES

### FOAM SOAP IN A CAN ASSORTMENT (DISPL/ OF 12)

7 oz. can of green foamy soap with a new green frog topper .A 7oz. can of Foaming Body Soap, with a cute d topper for foamy tub fun!
- Suitable for ages: 3+
- Suggested Retail Price: $4.99



### BAG FOR THE TUB

Store all your bath toys in this colorful, fast-drying mes bag with adorable, soft suction cup hooks.
- Suitable for ages: 2+
- Suggested Retail Price: $8.99

Back | Home | Back to Top

# Exhibit B

LAW OFFICES
# HOWARD, PHILLIPS & ANDERSEN
*A PROFESSIONAL CORPORATION*

GREGORY D. PHILLIPS
Direct Dial: (801) 366-7707
E-Mail: gdp@hpalaw.com

560 East 200 South, Suite 300
Salt Lake City, UT 84102

Telephone: (801) 366-7471
Facsimile: (801) 366-7706

April 25, 2007

**VIA EMAIL (info@alextoys.com); AND
VIA REGULAR MAIL**

ALEX TOYS & PANLINE, INC.
Attn: Legal Department
251 Union Street
Northvale, NJ 07647

Re:    ALEXTOYS.COM— Counterfeit Volkswagen Products

To Whom It May Concern:

This law firm represents Volkswagen of America, Inc. ("VWoA") in trademark enforcement actions and in trademark litigation. VWoA is a subsidiary of and the exclusive U.S. importer of cars manufactured by Volkswagen AG and, as such, VWoA is charged with protecting the trademarks associated with those cars. VWoA and Volkswagen AG are hereinafter collectively referred to as "VW."

VW takes policing and enforcement of their trademark rights very seriously, and has recently obtained preliminary and permanent injunctions against infringers who market and sell counterfeit Volkswagen trademarks without authorization. VW has also cooperated with law enforcement in obtaining felony counterfeiting convictions against counterfeiters of the VW trademarks. State of California v. Lee, et al., BA274850, 2005 LA Criminal Division (three felony convictions and restitution of $5,000.00 for counterfeit VW and Audi baseball caps).

Recently it has come to the attention of VW that you are infringing upon VW's intellectual property rights by manufacturing and/or selling **children's tub toys** bearing the distinctive shape of the Classic VOLKSWAGEN® BEETLE® without authorization. The distinctive shape of the Classic VOLKSWAGEN® BEETLE® is a duly registered trademark in the United States that belongs to VW. Use of this trademark, or any confusingly similar variations thereof, without the express written consent of VW violates state and federal law, is misleading to the public, and constitutes a misappropriation of the goodwill and reputation developed by VW. An image from your web site displaying the infringing product is shown below for your review.

-1-

ALEXTOYS.COM
April 25, 2007
Page 2



Your infringing "Tub Toy"
bearing the distinctive shape of the
Classic VW® BEETLE®

Compare to United States Trademark
Registration No. 3038741

    The law is well-established that you may not place counterfeits of the Volkswagen trademarks on your products, and/or sell products manufactured by others that bear counterfeits of the Volkswagen trademarks. Ford Motor Company v. Lloyd Design Corp., 184 F.Supp.2d 665, 667 (E.D.Mich. 2002) (permanently enjoining the use of counterfeits of various Ford, Jaguar, and Aston Martin trademarks on floor mats, and granting Ford its attorneys' fees and costs because of "Defendant's flagrant disregard for Plaintiffs' trademark rights."). VW cannot

ALEXTOYS.COM
April 25, 2007
Page 3

tolerate counterfeiting and infringement of its protected trademarks.

The law is also well settled that automobile manufacturers have protectable trade dress rights in the distinctive shapes of their automobiles. See, e.g., <u>Liquid Glass Enterprises, Inc., v. Dr. Ing. h.c.F. Porsche AG and Porsche Cars North America, Inc.</u>, 8 F.Supp.2d 398, 402 (D.N.J. 1998). See also, <u>Ferrari S.P.A. Esercizio v. Roberts</u>, 944 F.2d 1235, 1240 (6th Cir. 1991), cert. denied 505 U.S. 1219, 112 S.Ct. 3028 (1992) ("[T]he unique exterior design and shape of the Ferrari vehicles are their 'mark' or 'trade dress' which distinguish the vehicles' exterior shapes not simply as distinctively attractive designs, but as Ferrari creations"); <u>Chrysler Corp. v. Silva</u>, 118 F.3d 56, 58-59 (1st Cir. 1997) (trade dress of Dodge Viper protectable). <u>Volkswagenwerk Aktiengesellschaft v. Rickard</u>, 492 F.2d 474 (5th Cir. 1974) (affirming injunction barring, among other things, defendant service shop's use of "any silhouette, picture, caricature, or reproduction of the shape or appearance of the Volkswagen sedan"). <u>Volkswagenwerk v. Smith</u>, 471 F.Supp.385 (D.C.N.M. 1979) ("For many years the Volkswagen Silhouette has been synonymous in meaning with 'Volkswagen.'")

More specifically, numerous courts have recognized that VW has extensive trade dress rights in the distinctive shape of the Classic VOLKSWAGEN® BEETLE®. For example, in <u>Volkswagenwerk v. Smith</u>, the court found:

> "The long standing and distinctive shape of this Volkswagen sedan has caused the American public to identify the shape and the outline and picture of the shape of this automobile ("the Volkswagen Silhouette") with VWAG and with the products and services sold by the authorized Volkswagen network. For many years the Volkswagen Silhouette has been synonymous in meaning with 'Volkswagen.'" 471 F.Supp.385 (D.C.N.M. 1979).

VW produced the Classic VOLKSWAGEN® BEETLE® or automobile for nearly 70 years, and produced more than 21 million Classic BEETLE® vehicles. When the production of the Classic VOLKSWAGEN® BEETLE® ceased in 2003, the story made international headlines. As recently stated by the Washington Post, the Classic VOLKSWAGEN® BEETLE® is "the most popular car ever made ." The long-standing fame and reputation of the Classic VOLKSWAGEN® BEETLE®, together with the recognition by numerous courts of VW's extensive rights in the distinctive shape and styling of the Classic VOLKSWAGEN® BEETLE® conclusively show that the trade dress of the Classic VOLKSWAGEN® BEETLE® has acquired secondary meaning.

Additionally, the Southern District of New York held that "'Trade dress' is a form of mark protectable under Sec. 43(a)(1). The 'trade dress' of a product is essentially its total image and overall appearance." Philip Morris Inc. v. Star Tobacco Corp., 879 F.Supp. 379, 383

ALEXTOYS.COM
April 25, 2007
Page 4

(S.D.N.Y. 1995). The court further noted that "Trade dress, like a trademark, 'is a merchandising shortcut which induces a purchaser to select what he has been led to believe he wants.' To that end, the trademark and (trade dress owner) makes 'every effort to impregnate the atmosphere of the market with the drawing power of a congenial symbol.' If he succeeds, the trademark or trade dress owner 'has something of value'; and if 'another poaches upon the commercial magnetism of the symbol he has created, the owner can obtain legal redress.'" 879 F.Supp. at 384.

VW licenses and produces a wide variety of goods bearing its trademarks and trade dress, including children's clothing. As stated by the Second Circuit: "In order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market…. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." Dallas Cowboy Cheerleaders v. Pussycat Cinema, Ltd., 604 F.2d 200 (2nd Cir.1979). See also National Football League Properties, Inc. v. Wichita Falls Sportswear, 532 F.Supp.651 (W.D. Wash. 1982); Kentucky Fried Chicken Corp. v. Diversified packaging Corp., 549 F.2d 368 (5th Cir. 1977).

Your selection of VW's distinctive trademarks and trade dress can only lead to the conclusion that you are attempting to capitalize on and profit from the goodwill and reputation of VW by misappropriating VW's registered trademarks and trade dress in your products.

In order that VW may assess what damages it has suffered as a result of your sale of products using counterfeits of the VW trademarks, please provide the following information no later than **May 9, 2007**:

1)   The number of counterfeit products set forth by item (e.g., VOLKSWAGEN® BEETLE® or BUG™ tub toys, etc.) sold or distributed bearing the VW trademarks or any variation thereof;

2)   The gross revenue received from the sale of such counterfeit products set forth by item;

3)   The time period during which such counterfeit products have been offered and sold;

4)   The names and addresses of all non-retail purchasers of the counterfeit products and the number of each product listed by item purchased by each such purchaser; and

5)   The names and addresses of all suppliers of the counterfeit products.

ALEXTOYS.COM
April 25, 2007
Page 5


VW further demands that you turn over to VW for destruction all unsold counterfeit items no later than **May 9, 2007**. Volkswagen also demands that no later than **May 9, 2007**, you pay Volkswagen by cashier's check damages in the amount of twenty five percent (25%) of the gross revenues from the sales of any counterfeit products using the Volkswagen trademarks or trade dress, or $5,000.00, whichever is greater.[1]

The purpose of this letter is to secure your **voluntary agreement** to cease from violating VW's intellectual property rights. To demonstrate your agreement to do so, VW requires that you sign and return the below-attached agreement to me by no later than **May 9, 2007**. If I have not received a signed copy of the agreement from you by the close of business on that day, including the required information, products, and payment, I will infer that you are unwilling to resolve this matter voluntarily and will advise VW to prepare to file a complaint against you in federal district court.

You may be infringing VW's intellectual property rights in other ways, and VW reserves the right to bring to your attention other matters that VW believes infringe its copyrights, trademarks, and trade dress rights, or constitute false advertisement.

This letter is without prejudice to all rights of VW, including past or future royalties, past or future damages, attorney's fees, and to bring enforcement actions for all past or future violations of Volkswagen's rights.

Should you have any questions concerning Volkswagen's position in this matter, please do not hesitate to contact me.

Very truly yours,

Gregory D. Phillips

GDP:jpe

cc:    Volkswagen of America

---

[1] In the event that Volkswagen is forced to litigate this matter, Volkswagen will seek all profits from the sale of such products trebled as damages, plus its attorneys' fees and costs.

ALEXTOYS.COM
April 25, 2007
Page 6

## AGREEMENT

By execution of this Agreement, the undersigned agrees immediately to cease and desist from all unauthorized uses of the Volkswagen trademarks and trade dress in its products, services, advertisements, promotional literature, promotional telecasts, broadcasts, signage, on the Internet, or otherwise, in connection with the sale of any product, good, part, or service.

Specifically, by way of illustration and without limiting the general agreement expressed above, the undersigned agrees that it will:

(1) immediately cease from the unauthorized use of the VW trademarks and trade dress in your products, on your website, in your advertisements or otherwise;

(2) immediately turn over to VW's counsel for destruction all products or materials bearing VW® trademarks or trade dress, as well as any other designs or logos that are confusingly similar to the VW trademarks;

(3) immediately cease and desist from the advertisement and/or sale of any products bearing counterfeits of the VW trademarks, and immediately turn over to VW's counsel, for destruction, all products bearing counterfeits of the VW Trademarks, as well as any other designs or logos that are confusingly similar to the VW trademarks;

(4) provide the following information no later than **May 9, 2007:**

  a) The number of counterfeit products set forth by item sold (e.g., VOLKSWAGEN® BEETLE® or BUG® tub toys, etc.) or distributed bearing the VW trademarks or trade dress;

  b) The gross revenue received from the sale of such counterfeit products set forth by item;

  c) The time period during which such counterfeit products been offered or sold;

  d) The names and addresses of all non-retail purchasers of the counterfeit products and the number of each product listed by item purchased by each such purchaser; and

  e) The names and addresses of all suppliers of the counterfeit products.

ALEXTOYS.COM
April 25, 2007
Page 7

    (5)    No later than **May 9, 2007**, pay Volkswagen by cashier's check damages in the amount of twenty five percent (25%) of the gross revenues from the sales of any products using the Volkswagen trademarks, or $5,000.00 whichever is greater.

The undersigned further agrees that no later than **May 9, 2007**, the undersigned will provide evidence of compliance of the matters set forth above to VW's counsel.

The undersigned agrees and acknowledges that any violation or breach of this Agreement will cause irreparable harm to VW, and that VW will be entitled to liquidated damages of $10,000.00, or what ever profits realized by the undersigned as a result of the violation of this agreement, whichever is greater.   The undersigned further agrees and acknowledges that VW will be entitled to entry of both a preliminary and permanent injunction against the undersigned for any violation of this Agreement, as well as any other remedy allowed by law.  The undersigned further agrees that if it breaches this Agreement, it will pay all costs incurred by VW in enforcing this Agreement, including reasonable attorney's fees, whether incurred with or without suit or before or after judgment.

**AGREED TO:**

**ALEX TOYS & PANLINE, INC.**

**Signature:** _____

**By:** _____

**Its:** _____

**Date:** _____

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| VOLKSWAGEN AG, a German Corporation and VOLKSWAGEN of AMERICA, INC., a New Jersey corporation, | HONORABLE |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. |
| PANLINE U.S.A., INC., d/b/a ALEX TOYS, a New Jersey corporation, | |
| Defendant. | |

## COMPLAINT

Plaintiffs Volkswagen AG and Volkswagen of America, Inc. (collectively "Volkswagen") complain of defendant Panline USA, Inc., d/b/a 'Alex Toys' ("Defendant") as follows:

### SUBSTANCE OF THE ACTION

1.     This is a case of infringement of Volkswagen's trademark rights in the world-famous distinctive shape and styling of the Classic VOLKSWAGEN® BEETLE® automobile (the "Volkswagen Trademarks"). Defendant's infringement arises out of its unauthorized use of the Volkswagen Trademarks in numerous children's toys formed in the distinctive shape of the Classic VOLKSWAGEN ® BEETLE®. Including, but not limited to, the products: Lacing Around – City/Country, Rock Painting Kit, My Touchable Puzzle -4- Vehicles, My First Words, Finger Painting Party, Tissue Paper Art, Sand Art – Sand Shapes, Paper Mache Refill, Dough Tool Set, Clay Racer Activity Kit, and Crayon Car. Examples of the Defendant's infringing

products are set forth as Exhibit A of this complaint.

2.    Under the circumstances, consumers are likely to be confused as to whether Volkswagen has endorsed or licensed Defendant's infringing products particularly where Volkswagen has already entered this market by licensing several competitors of Defendant to manufacture and market toys incorporating the distinctive BEETLE® shape.

3.    The market for licensing the use of the Volkswagen Trademarks on toys and other products is vibrant and lucrative, and Defendant is attempting to bypass the official licensing channel by misappropriating the goodwill that Volkswagen has developed in those marks. Consumer confusion (the touchstone of trademark infringement) is more than likely under these circumstances; it is virtually inevitable.    Consumers can hardly be expected to distinguish between third parties that offer officially licensed Volkswagen products and others (like Defendant) that seek to misappropriate Volkswagen's goodwill without permission.

4.    Defendant's infringing products are a blatant violation of Volkswagen's rights under federal trademark law and under the common law. Volkswagen asserts claims for federal trademark and trade dress dilution, federal trademark infringement, false designation of origin or sponsorship, false advertising, and trade dress infringement under Sections 43(c), 32(1), and 43(a) of the United States Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1125(c), 1114(1), and 1125(a) and trademark infringement under common law.    Volkswagen seeks a permanent injunction preventing Defendant from using the distinctive Volkswagen Trademarks, along with an award of damages, treble damages, and Volkswagen's attorneys' fees and costs.

1

## THE PARTIES

5.    Plaintiff Volkswagen AG is a corporation organized under the laws of the Federal Republic of Germany with its principal place of business in Wolfsburg, Germany.

6.    Plaintiff Volkswagen of America, Inc. is a corporation organized under the laws of the State of New Jersey with its principal place of business in Auburn Hills, Michigan.

7.    Defendant Panline U.S.A., Inc d/b/a Alex Toys is a corporation organized under the laws of the State of New Jersey, and having a principle place of business at 251 Union Street, Northvale, New Jersey 07547.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction of this action pursuant to:

(a)    Judicial Code, 28 U.S.C. § 1331, relating to "federal question" jurisdiction;

(b)    Section 39 of the Lanham Act, 15 U.S.C. § 1121, giving this Court jurisdiction over all actions arising under the Lanham Act without regard to the amount in controversy;

(c)    Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), relating to the counterfeit, reproduction, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods;

(d)    Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a), relating to the use of false designations of origin and/or sponsorship tending falsely to describe or designate the source, and/or sponsorship of goods affecting commerce, and relating to false advertising and trade dress infringement and dilution;

2

(e)     Section 43(c) of the Lanham Act, 15 U.S.C., Section 1125(c), relating to dilution;

(f)     The Judicial Code, 28 U.S.C. § 1338(a), conferring on this Court jurisdiction over actions arising under federal trademark laws;

(g)     The Judicial Code, 28 U.S.C. § 1338(b), relating to claims of unfair competition "joined with a substantial and related claim under the ... trademark laws"; and

(h)     The Judicial Code, 28 U.S.C. § 1367 providing for supplemental jurisdiction over the state law claims in this action.

9.     Defendant is subject to personal jurisdiction in this District because it has purposefully and knowingly marketed and sold its infringing products to consumers in this District by means of an interactive website at ALEXTOYS.US that solicits and allows Michigan residents to order and purchase goods on the Internet. The operation of such a website subjects Defendant to personal jurisdiction in the State of Michigan. See e.g., Audi AG v. Izumi, 204 F.Supp.2d 1014 (E.D. Mich. 2002) (interactive website that allows Michigan residents to order products subjects defendant to personal jurisdiction in Michigan).

10.     Venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## GENERAL ALLEGATIONS
### *Volkswagen's Trademark Rights*

11.     For many decades, Volkswagen has used the Classic VOLKSWAGAN® BEETLE® trademarks in connection with the sale, distribution, maintenance, service, and repair of automobiles and related products and services.

12.     Volkswagen has obtained numerous trademark registrations for the distinctive shape of the Classic BEETLE®, both domestically and internationally, including but not limited

to US Reg 3038741, US Reg 3043073 and Int Reg 778996. The distinctive design and shape of

the Classic BEETLE® is immediately identifiable and exclusively associated by the general

public with Volkswagen, and has thus acquired secondary meaning. Volkswagen has obtained

registered trademarks in the design and styling of the Classic BEETLE®, as depicted below.



USPTO Registration No. 3043073

International Registration No. 778996

13.    The Classic VOLKSWAGEN® BEETLE® is among the most successful, and

certainly the most recognizable and distinctive, of all vehicles ever produced. Volkswagen

produced the Classic BEETLE® for over 60 years, selling over 21 million Classic BEETLE®

vehicles to consumers. During that time Volkswagen expended significant time, effort, money,

and resources in advertising and promoting the Classic VOLKSWAGEN® BEETLE®. Due to

the continued and unquestionable success the Classic BEETLE® enjoyed, Volkswagen has

established and cultivated significant goodwill in its Classic BEETLE® trademark and trade

dress. In addition, due to the success and goodwill associated with the Volkswagen Classic

BEETLE®, Volkswagen introduced the New BEETLE® in 1998 and has spent millions of

dollars and has expended significant effort in advertising and promoting the New BEETLE®

throughout the world.

4

14.     The inherently distinctive and non-functional shape of the Classic BEETLE® has been owned and developed by Volkswagen since its inception.  As the owner of the Classic BEETLE® trade dress and of the goodwill associated with the Classic BEETLE®, Volkswagen has the right to use and to license the use of the trade dress of the Classic BEETLE®, and the right to enforce its trade dress and trademark rights in the Classic BEETLE® and in the other Volkswagen Trademarks.

15.     Volkswagen has used and has licensed the use of the trade dress of the Classic BEETLE® in numerous products, including toy cars, books and children's toys.  The trade dress of the Classic BEETLE® has become an asset of substantial and inestimable worth to Volkswagen.  Licensed merchandise incorporating the Classic BEETLE® trade dress and other Volkswagen Trademarks includes (without limitation):



| Volkswagen® Classic Beetle® by Kinsmart® | Volkswagen® Classic Beetle® with Decals by Kinsmart® |



1962 Diecast Volkswagen® Beetle® by Mattel®

1962 Volkswagen® Beetle® by Mattel®

Baja Bug by Mattel

16.    Volkswagen has used the Volkswagen Trademarks since long before the acts of Defendant complained of herein.  The Volkswagen Trademarks are famous and distinctive, and have come to be associated by the consuming public exclusively with the products marketed by Volkswagen.   The Volkswagen Trademarks are invaluable assets of substantial and inestimable worth to Volkswagen

### *Defendant's Infringement of Volkswagen's Trademark Rights*

17.    Subsequent to Volkswagen's development, use, and registration of the Volkswagen Trademarks, and without Volkswagen's consent, Defendant began using the Volkswagen Trademarks or confusingly similar variations of them in its business.

6

18.    Defendant is in no way affiliated with, authorized, or sponsored by Volkswagen and has no authority to use the Volkswagen Trademarks to identify its products, services, or goods it advertises, promotes, or sells.

19.    Defendant is in the business of selling the various toys fully incorporating the Classic BEETLE® trademarks and trade dress in competition with similar products licensed and authorized by Volkswagen.  In marketing it products, Defendant has attempted to capitalize on and profit from the substantial goodwill that Volkswagen has developed in the Volkswagen Trademarks by utilizing the shape of the Classic BEETLE®.

20.    Defendant's collection of infringing products create a strong likelihood of consumer confusion.  Consumers who purchase the defendant's toys, as well as potential consumers who see it depicted on the Internet, in stores, or in the hands of a consumer, cannot reasonably distinguish Defendant's toys from other toys and books that are officially licensed by Volkswagen.

21.    Defendant's use of the Volkswagen Trademarks in conjunction with the advertisement, promotion, and sale of Defendant's products and services constitutes a misappropriation of the Volkswagen Trademarks and associated goodwill, and is likely to cause potential purchasers of Defendant's products and services, as well as the public at large, to believe that Defendant's products are affiliated with, authorized, sponsored by, or endorsed by Volkswagen.    In addition, Defendant's wrongful use of the Volkswagen Trademarks or confusingly similar versions thereof, dilutes, tarnishes, and whittles away the distinctiveness of the Volkswagen Trademarks.

22.    Defendant continues to use the Volkswagen Trademarks and/or intentionally similar versions thereof with actual knowledge of Volkswagen's prior adoption and use of the

7

Volkswagen Trademarks. Defendant has carried out and continues to carry out such acts with the intent to mislead and deceive consumers and the public in general. In so doing, Defendant has caused irreparable damage to the Volkswagen Trademarks and to the goodwill of Volkswagen in the Volkswagen Trademarks.

23.     Volkswagen exercises great care and exerts substantial effort to control the nature and quality of the goods and services provided under the Volkswagen Trademarks, including the toys it licenses using the distinctive trade dress of the Classic BEETLE®. Defendant is in no way subject to any of the quality-control procedures or mechanisms employed by Volkswagen, despite the appearance that Defendant's toys gives to consumers that it is an officially licensed product.

### *Volkswagen's Demands that Defendant Cease and Desist from Further Infringement*

24.     When Volkswagen learned of Defendant's misappropriation and infringement of the Volkswagen Trademarks in 2007, Volkswagen sent a cease and desist letter to Defendant demanding that it immediately cease and desist from any further infringement of the Volkswagen Trademarks. A true and correct copy of the Cease and Desist Letter is attached hereto as Exhibit B.

25.     Despite Volkswagen's demands, Defendant has continued to advertise and sell Defendant's infringing toys, and has refused to accede to Volkswagen's cease and desist request.

### FIRST CLAIM FOR RELIEF
(FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114)

26.     Volkswagen realleges and incorporates herein the allegations above.

27.     Volkswagen has demanded that Defendant refrain from the use of the Volkswagen Trademarks and counterfeits of the Volkswagen Trademarks as described above. Despite Volkswagen's well-known prior rights in the Volkswagen Trademarks, Defendant has

used and continues to use, without Volkswagen's authorization, the Volkswagen Trademarks, or counterfeits, copies, reproductions or colorable imitations thereof in connection with the advertisement, promotion, and sale of Defendant's products and services.

28.    Defendant's misappropriation of the Volkswagen Trademarks is likely to cause potential purchasers of Defendant's products and services, as well as the public at large, to believe that Defendant's products are affiliated with, authorized, sponsored by, or endorsed by Volkswagen.

29.    Defendant's actions constitute willful infringement of Volkswagen's exclusive rights in the Volkswagen Trademarks in violation of 15 U.S.C. § 1114.

30.    Defendant's use of the Volkswagen Trademarks, or of counterfeits, copies, reproductions, or colorable imitations thereof, has been and continues to be done with the intent to cause confusion, mistake, and to deceive consumers concerning the source and/or sponsorship of Defendant's products and services.  Defendant has used counterfeits of the Volkswagen Trademarks in connection with its products with the knowledge that the marks are counterfeits and with the intent to use counterfeits.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

31.    As a direct and proximate result of Defendant's conduct, Volkswagen has suffered irreparable harm to the valuable Volkswagen Trademarks.  Unless Defendant is restrained from further infringement of the Volkswagen Trademarks, Volkswagen will continue to be irreparably harmed.

32.    Volkswagen has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendant's acts are allowed to continue.

33.    As a direct and proximate result of Defendant's conduct, Volkswagen has

9

suffered damages to the valuable Volkswagen Trademarks and trade dress, and other damages in an amount to be proved at trial.

**SECOND CLAIM FOR RELIEF**
(FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP, FALSE ADVERTISING, AND TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(a))

34.     Volkswagen realleges and incorporates herein the allegations above.

35.     Defendant has knowingly misappropriated the Volkswagen Trademarks, or counterfeits, reproductions, copies, or colorable imitations thereof, in connection with the products and services that Defendant manufactures, advertises, promotes, and sells. Defendant has used counterfeits of the Volkswagen Trademarks and trade dress knowing that the marks used are counterfeits and with the intent to use counterfeits of the Volkswagen Trademarks. Defendant's actions render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

36.     Defendant's use of the Volkswagen Trademarks alleged above is likely to confuse, mislead or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendant's services and products, and is likely to cause such people to believe in error that Defendant's products and services have been authorized, sponsored, approved, endorsed, or licensed by Volkswagen or that Defendant is in some way affiliated with Volkswagen.

37.     Defendant's acts constitute false or misleading descriptions, false advertising, and false designations of the origin and/or sponsorship of Defendant's goods, and constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

10

38.    By reason of Defendant's actions, Volkswagen has suffered irreparable harm to the valuable Volkswagen Trademarks.   Unless Defendant is restrained from its actions, Volkswagen will continue to be irreparably harmed.

39.    Volkswagen has no remedy at law that will compensate for the continued and irreparable harm that will be caused if Defendant's acts are allowed to continue.

40.    As a direct and proximate result of Defendant's conduct, Volkswagen has suffered damages to the valuable Volkswagen Trademarks, and other damages in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF
(TRADEMARK AND TRADE DRESS DILUTION UNDER 15 U.S.C. § 1125(c))

41.    Volkswagen realleges and incorporates herein the allegations above.

42.    The Volkswagen Trademarks have become famous and distinctive worldwide through Volkswagen's continuous and exclusive use of the Volkswagen Trademarks in connection with Volkswagen's products and services.

43.    Because Volkswagen products and services have gained a reputation for superior quality, durability, and performance, the Volkswagen Trademarks have gained substantial renown and have become famous.

44.    Defendant has willfully and intentionally misappropriates and continues to misappropriate the Volkswagen Trademarks, and counterfeits thereof, in connection with the advertisement, promotion, and sale of Defendant's products and services.

45.    Defendant's misappropriation of the Volkswagen Trademarks and trade dress, and counterfeits thereof, has caused and continues to cause irreparable injury to and dilution of the Volkswagen Trademarks' distinctive quality in violation of Volkswagen's rights under 15 U.S.C.

11

§ 1125(c).  Defendant's wrongful misappropriation of the Volkswagen Trademarks actually dilutes, blurs, tarnishes, and whittles away the distinctiveness of the Volkswagen Trademarks.

46.    Defendant has misappropriated and continues to misappropriate the Volkswagen Trademarks or counterfeits thereof, willfully and with the intent to dilute the Volkswagen Trademarks, and with the intent to trade on the reputation and goodwill associated with the Volkswagen Trademarks.

47.    As a direct and proximate result of Defendant's conduct, Volkswagen has suffered irreparable harm to the valuable Volkswagen Trademarks.

48.    Unless Defendant is enjoined, the valuable Volkswagen Trademarks will continue to be irreparably harmed and diluted.  Volkswagen has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendant's actions are allowed to continue.

49.    Defendant has misappropriated and continues to misappropriate the Volkswagen Trademarks, trade dress, or counterfeits thereof, willfully and with the intent to dilute the Volkswagen Trademarks, and with the intent to trade on the reputation and goodwill of Volkswagen and of the Volkswagen Trademarks.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 111(a).

50.    As a direct and proximate result of Defendant's conduct, Volkswagen has suffered damages to the valuable Volkswagen Trademarks, and other damages in an amount to be proved at trial.

### FOURTH CLAIM FOR RELIEF
(COMMON LAW TRADEMARK INFRINGEMENT)

51.    Volkswagen realleges and incorporates herein the allegations above.

12

52.    Volkswagen was the first to use the Volkswagen Trademarks or any marks similar thereto in association with the sale of any product and service. As a result of the continued sale by Volkswagen, the Volkswagen Trademarks have become widely known and Volkswagen has become identified in the public mind as the manufacturer and/or licensor of the products and services to which the Volkswagen Trademarks are applied.

53.    As a result of the experience, care, and service of Volkswagen in producing Volkswagen products and services, Volkswagen's products and services have become widely known and have acquired a world-wide reputation for quality, durability, and performance. Moreover, the Volkswagen Trademarks have become associated with Volkswagen products and services, and have come to symbolize the reputation for quality and excellence of Volkswagen products and services. Accordingly, the Volkswagen Trademarks have become distinctive.

54.    Defendant, with knowledge of and with intentional disregard of Volkswagen's rights, continues to advertise, promote, and sell services and products using the Volkswagen Trademarks or counterfeits and confusing imitations thereof. Such acts by Defendant have caused and continue to cause confusion as to the source and/or sponsorship of Defendant's products and services.

55.    Defendant's acts constitute willful infringement of Volkswagen's exclusive rights in the Volkswagen Trademarks, in violation of the common law

56.    By reason of Defendant's actions, Volkswagen has suffered irreparable harm to the valuable Volkswagen Trademarks. Unless Defendant is restrained from further infringement of the Volkswagen Trademarks, Volkswagen will continue to suffer irreparable harm.

57.    Volkswagen has no remedy at law that will adequately compensate it for the irreparable harm it will suffer if Defendant's conduct is allowed to continue.

13

58.    As a direct and proximate result of Defendant's conduct, Volkswagen has suffered damages to the valuable Volkswagen Trademarks and trade dress, and other damages in an amount to be proved at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Volkswagen prays for judgment against Defendant as follows:

1.    Under all claims for relief, that a permanent injunction be issued enjoining Defendant, its employees, agents, successors and assigns, and all those in active concert and participation with it, and each of them who receives notice directly or otherwise of such injunctions, from:

(a)    imitating, copying, or making unauthorized use of any of the Volkswagen Trademarks or trade dress;

(b)    importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of any or all of the Volkswagen Trademarks or trade dress, including without limitation Defendant's Lacing Around – City/Country, Rock Painting Kit, My Touchable Puzzle -4- Vehicles, My First Words, Finger Painting Party, Tissue Paper Art, Sand Art – Sand Shapes, Paper Mache Refill, Dough Tool Set, Clay Racer Activity Kit, and Crayon Car products;

(c)    using any simulation, reproduction, counterfeit, copy or colorable imitation of the Volkswagen Trademarks or trade dress in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any service or product;

14

(d)     using any false designation of origin or false description (including, without limitation, any letters or symbols constituting the Volkswagen Trademarks) or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendant is in any manner associated or connected with Volkswagen or the Volkswagen Trademarks, or is sold, manufactured, licensed, sponsored, approved or authorized by Volkswagen;

(e)     transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Defendant's possession, custody or control bearing a design or mark substantially identical to any or all of the Volkswagen Trademarks or trade dress;

(f)     engaging in any other activity constituting unfair competition with Volkswagen with respect to the Volkswagen Trademarks, or constituting an infringement of any or all of the Volkswagen Trademarks, or of Volkswagen's rights in, or to use or exploit, any or all of the Volkswagen Trademarks; and

(g)     instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

2.     For an order directing that Defendant deliver for destruction all products, labels, tags, signs, prints, packages, videos, and advertisements in its possession or under its control, bearing or using any or all of the Volkswagen Trademarks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118.

3.     For an order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product

15

manufactured, sold or otherwise circulated or promoted by Defendant is authorized by Volkswagen or related in any way to Volkswagen's products or services.

4.    For an order directing that Defendant file with the Court and serve upon Volkswagen's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the above.

5.    For an order permitting Volkswagen, and/or auditors for Volkswagen, to audit and inspect the books and records of Defendant for a period of six months after entry of final relief in this matter to determine the scope of Defendant's past use of the Volkswagen Trademarks, including all revenues and sales related to Defendant's use of the Volkswagen Trademarks, as well as Defendant's compliance with orders of this Court.

6.    For an award of Volkswagen's costs and disbursements incurred in this action, including Volkswagen's reasonable attorneys' fees.

7.    For an award of Volkswagen's damages trebled or, alternatively, an award of Defendant's wrongful profits trebled, whichever is greater, plus Volkswagen's costs and attorneys fees, pursuant to 15 U.S.C. § 1117.

8.    For an award of Volkswagen's damages arising out of Defendant's acts.

9.    For an order requiring Defendant to file with the Court and provide to Volkswagen an accounting of all sales and profits realized by Defendant through the use of the Volkswagen Trademarks and any counterfeits thereof.

10.    For an award of interest, including pre-judgment interest on the foregoing sums.

11.    For such other and further relief as the Court may deem just and proper.

Dated: June __, 2007.

Edward C. Cutlip (P35836)
Attorneys for Plaintiffs
Detroit Center
500 Woodward Avenue, Suite 2500
Detroit, Michigan  48226-3406
(313) 961-0200

Co-Counsel
Gregory D. Phillips
Scott R. Ryther
Thomas R. Lee, Of Counsel
HOWARD, PHILLIPS & ANDERSEN
560 E. 200 South, Suite 300
Salt Lake City, Utah  84102
801-366-7471

Attorneys for Volkswagen AG and Volkswagen
of America, Inc.

17